## VALIDITY OF A LOCAL OPTION ELECTION.

Common Pleas Court of Cuyahoga County.

IN RE JONES PETITION NO. 14 IN A RESIDENCE DISTRICT.

Decided, January 30, 1911.

*Election Under Jones Law—Providing that Traffic in Intoxicating Liquors May Be Prohibited in a Residence District—Construction of the Phrase "Qualified Electors"—Description of Residence District Sufficient, When—Sections 4861, 4863, 6068 and 6158.*

1. The right to vote has its source in the Constitution of the state, and the statute requiring registration in no way qualifies that right. It follows therefore that the phrase "qualified electors," as used in the statutes relating to local option elections, must be construed to mean an elector who is qualified to register within the proposed residence district, and not in the more restricted meaning of one who is not only qualified to register but actually has registered.

2. A local option election is not invalidated by reason of the insufficiency of the description of the "residence district" involved therein, where there is a map of the proposed district attached to the petition, and the description of the district by enumerating certain voting precincts presents no more difficulty with reference to venue than would be encountered in a prosecution for illegal voting.

*G. W. Shaw,* for petitioners.
*Charles Earhardt,* contra.

COLLISTER, J.

There is no contest made on any questions involved in the hearing, except on the sufficiency of the description of the residence district, and the validity of certain signatures to the petition.

On the petition there appear the names of 437 signers. At the municipal election last before the filing of the petition there were cast, in the district, 680 votes. Therefore, to make this petition valid, so far as the number of names thereon is concerned, it must contain at least 341 valid signatures. Of the

names on the petition, there are 274 about the validity of which there is no contest, and by consent these names are properly counted in favor of the petition. Of the names on the petition, there are forty-four which it is conceded should not be counted, because, for various reasons, they are invalid. Of the signatures on the petition, there are seventy-eight which are contested on one ground only. It is conceded that the persons making such signatures were, at the time they signed the petition and at the time the petition was filed, made citizens of the United States, residents of Ohio and of Cuyahoga county for more than one year prior to the date of their respective signatures, and were residents of their respective precincts, which were in the residence district under consideration, for more than four months prior to the dates of their respective signatures, and were such residents at the date of the filing of the petition.

It is also conceded that, at the times said signatures were placed on said petition, and at the date of the filing thereof, none of said seventy-eight persons were "registered voters."

There are contests on other names, but the court does not deem it important to consider those, for the reason that, should the court decide in favor of the validity of said seventy-eight names, then the petition would contain a sufficient number of names; and should the court decide against the validity of said seventy-eight names, there would not be sufficient names remaining to make a majority, even though all said other disputed names should be counted as valid.

The foregoing facts raise the question, should said seventy-eight names be counted? The determination of this question requires a construction of Section 6067 of the General Code, which reads as follows:

"The phrase 'qualified elector,' as used in this chapter when relating to petitions in a residence district of a municipal corporation, means a registered male voter in a municipal corporation which has registration or a male voter entitled to register therein, or a male voter in a municipal corporation which does not have registration, provided that in each such qualified elector has been a *bona fide* resident of such residence district for four months before the filing of the petition upon which his name appears."

That section, before the adoption of the General Code, read as follows:

"The term 'qualified elector,' as used in this act, means registered male voters in all municipal corporations which have registration, and all other male voters entitled to register, who have been *bona fide* residents of the district for four months before such petition is filed with the mayor or judge. In municipalities which do not have registration, such male voter or male qualified elector must be a *bona fide* resident of the district for four months before such petition is filed with the mayor or judge." 98 O. L.

In the opinion of the court, the *right* to vote has its source in the Constitution of the state and the statutes, outside of the statutes requiring registration.

Article V, Section 1, of the Constitution reads as follows:

"Every white male citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township, or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections."

Sections 4861 and 4863 of the General Code read as follows:

"Section 4861. Every male citizen of the United States, who is of the age of twenty-one years or over, and possesses the qualifications in regard to residence hereinafter provided, shall be entitled to vote at all elections.

"Section 4863. No person shall be permitted to vote at any election unless he shall have been a resident of the state for one year, resident of the county for thirty days, and, except as provided in the next section, resident of the township, village or ward of a city or village for twenty days next preceding the election at which he offers to vote."

The registration acts are merely regulations of the "exercise" of the right to vote, to the end that fraud be not committed, or, if committed, be more easily detected.

The Century Dictionary gives this definition of "Registration of voters or electors":

"*The Registration of Voters or Electors.* In the United States, a system for the prevention of frauds in the exercise of

the suffrage, by requiring voters to cause their names to be registered in books provided for the purpose in each election district, with appropriate particulars of residence, age, etc., to enable investigation to be made, and the right of the voter to cast the ballot to be challenged, if there be occasion."

In *Lewis Bergiwin* v. *Curtz,* 127 Cal., 86, the court says:

"Registration is not a 'qualification' of an elector, and can not add to qualification fixed by the Constitution; but it is to be regarded as a reasonable regulation by the Legislature for the purpose of ascertaining who are qualified electors, and of having their names enrolled upon an authenticated list in order to prevent illegal voting."

In *White* v. *Regan,* 25 Ark., 629, the court says:

"By the term 'qualified elector,' we do not mean simply a registered voter; for we can conceive that one may be a qualified elector entitled to hold office, sit on a jury, etc., and yet not be entitled to vote under the law for want of a certificate of registration. A qualified elector is one who is not embraced in any of the six subdivisions of Article VIII, Section 3, of the Constitution; and a certificate of registration is evidence thereof, the want of which is not conclusive as to the right of a claimant to office."

The act as orginally passed has been twice construed: once by Mayor Dempsey, of Cincinnati, who was an able lawyer, and had been at one time a judge of the Superior Court of Cincinnati. His decision is reported in the 5th Ohio Law Reporter on page 517. I quote so much of his opinion as is pertinent, from page 518:

"In other words, the mayor required the proponents of said petition, first, to prove satisfactorily to him that such signatures were made by the persons whose names were attached to the petition; that the persons so signing were residents, at the time of signing, of the districts set forth in the petition; that said signers were electors in said district who had registered at the November election in 1905; and that if any of said signers had not registered at the election of 1905, then it was incumbent upon said proponent to show that said signer was a male person twenty-one years of age, and, at the time of attaching his signature, a resident of said district at least four months prior to the time of filing said petition."

The other decision was by Judge Woodmansee, of the Court of Common Pleas of Hamilton County, and is reported in 6 Nisi Prius (N.S.), page 251. I quote so much of that opinion as is pertinent on pages 255 and 256:

."Thirty of the signers to the petition did not appear to have been registered voters, but the testimony discloses that twelve of them were proved to be citizens, that they had been residents of the state of Ohio for more than one year, and of the territory for more than four months, before the filing of said petition, which fact fully qualifies them to be counted with the registered voters, making the number 178.".

As the language on the same subject in the General Code, Section 6067, differs in some words and arrangement of phrases from the section as originally enacted, it is claimed a different construction should be given it, and none but "registered voters" can be counted on a petition such as the one under consideration.

Section 6067 has already been quoted at length. I am inclined to think said section should be construed to mean the same as does the original act. Aside from these decisions construing said original act, the language of said section seems plain to me, and should be construed to mean as though written as follows:

"The phrase 'qualified electors,' as used in this chapter, when relating to petitions in a residence district of a municipal corporation, means (1) a registered male voter in a municipal corporation which has registration; (2) a male voter entitled to register therein." * * *

Under this class of laws it has been repeatedly decided by nisi prius courts in Ohio, and perhaps by some of the higher courts in Ohio, and by courts of last resort in other states, that the Legislature can, within reason, fix any standard it sees fit, for the persons who shall decide by vote or petition on the question involved in such laws. "A male voter entitled to register therein," would be a male voter who had all the constitutional and statute qualifications, other than that of having registered. These seventy-eight persons having such qualifications, it follows that they must be counted. These seventy-eight names added to the said 274 names make a total of 352 valid signatures,

and the petition is held valid so far as the number and qualifications of signers are concerned.

The remaining question is as to the sufficiency of the description of the "residence district." This question is more difficult of solution, particularly when its sufficiency is challenged so earnestly by counsel for whose well known fairness and legal learning the court has the highest respect.

Section 6068 of the General Code reads as follows:

"The phrase 'residence district,' as used in this chapter and, in the penal statutes of this state, means a clearly described, contiguous, compact section or territory in a municipal corporation bounded by street, corporation or other well-recognized lines or boundaries, and containing not less than three hundred qualified electors, nor more than five thousand qualified electors."

The description of the residence district in the petition reads as follows:

"We, the undersigned, respectfully represent that we are qualified electors in the following residence district, to-wit, the following precincts and portions of precincts of Ward 25: Precinct M; Precinct G; Precinct L, excepting that portion of said precinct bounded by the middle lines, respectively, of. Hough avenue, N. E., of Crawford road, N. E., of Harkness road, N. E., and of East 90th street; that portion of Precinct D west of the middle line of Ansel road, N. E."

There is a map attached to the petition which complies with the statute which requires a map to be attached to such petitions, showing the outlines of the district and all saloons within the district.

There is no question made but that the territory described, howsoever described, is a compact and contiguous territory. It is, however, claimed that the territory or section is not "clearly described," and is not described as being bounded as the statute requires.

It will be observed that the description in the petition is made by naming some precincts and parts of precincts in Ward 25. Inasmuch as Section 6158 of the General Code makes it an offense to sell intoxicating liquor as a beverage, in a residence district, from and after thirty days after the finding of the

proper tribunal has been made, that a majority of the qualified
electors in said district was in favor of prohibiting the sale of
intoxicating liquors in said district, it is claimed that the descrip-
tion by precincts and parts of precincts is too indefinite to base
a proper venue for a prosecution by the state, and too uncertain
because the precincts may be changed from time to time.

In Webster's New International Dictionary, "boundary" is
described as follows: "That which indicates or fixes a limit,
or extent, or makes a bound, as of a territory."

In the Century Dictionary, the word "boundary" is defined
as follows: "That which serves to indicate the bounds or limits
of anything; hence a limit or boundary line. A boundary, in
its stricter sense, is a visible mark, indicating a dividing line
between two things, or it is that line itself; it marks off a given
thing from other things like its kind, as one field or country
from another."

A reference to some of the statutes of the state may help solve
the problem.

Section 4788 provides for a board of deputy state supervisors
and inspectors of elections, and reads as follows:

"In each county of the state which contains a city wherein
annual general registration of electors is required by law, there
shall be a board of deputy state supervisors and inspectors of
elections, consisting of four members, who shall be qualified
electors of the county."

Section 4851 provides for the division of wards into election
precincts, and for the subdivision and rearrangement of pre-
cincts, and reads as follows:

"In cities in which registration is required by law, when five
hundred votes or more have been cast at the last preceding elec-
tion in any ward or in any precinct in any ward, such ward or
election precinct shall be divided by the board of deputy state
supervisors of the county into two or more election precincts so
as to limit the number of votes in each ward or precinct to two
hundred and fifty as nearly as may be practicable. From time to
time thereafter, such board shall rearrange, subdivide or com-
bine precincts as often as it may deem such action necessary
to secure the convenience of electors and the prompt and correct

conduct of elections.   But no precinct so created shall contain less than two hundred voters.''

Section 4871 provides for the registration of voters in the several wards and precincts, and reads as follows:

''In cities which now or hereafter may have a population of one hundred thousand or more, when ascertained in the manner provided in the preceding section, there shall be an annual general registration of all the electors therein in the several wards and precincts thereof on the days and in the manner hereinafter provided.''

Section 4878 provides that the board of deputy state supervisors shall divide, define and proclaim the election precincts and fix boundaries, etc., and reads as follows:

''The board of deputy state supervisors shall divide, define and proclaim the election precincts of such city and fix the boundaries thereof in the manner provided by law, and provide for furnishing to each registrar of electors and judges of election a map and pertinent description of such divisions and boundaries and of changes which, from time to time, are made by them.''

Section 4911 provides that voters must register in their respective precincts, and reads as follows:

''Each male person who is a citizen of the United States and lawfully resident of this state and of any city wherein registration is required, who is, or at the next ensuing election in such city will be, entitled to vote therein, on application in the election precinct where he lawfully resides and complying with the requirements herein, shall be registered as a resident and elector therein, but not otherwise.   No person shall be entitled to vote at any election in such city unless he shall establish his residence by causing himself to be registered in the precinct where he shall claim to reside, in the manner and at the time required herein, nor shall a ballot be received by the judges at any election under any pretense whatever unless the name of the person offering it shall have been entered on both of the registers of the precinct in which he claims to vote, as herein provided.   It shall be the duty of each elector resident in any such city to see that his name has been so registered.''

Section 5055 provides where electors shall vote, and reads as follows:

"Each qualified elector shall vote at the polls of the precinct in which he has a legal residence, unless otherwise directed by special provision of law."

In view of these provisions, it seems to me that no more definite information should be required in a district where a person is to sign a petition, concerning certain territory, than the statute requires of a voter who is to register or vote.

In this connection see McDaniels case, reported in 3 Pennsylvania Law Journal, page 311, the opinion of the court being in the following words:

"The Constitution of Pennsylvania provides that 'in elections every white free man   *   *   *   having resided in this state one year, and in the election district ten days,   *   *   *   shall enjoy the right of an elector.' The term 'election district' as employed in the Constitution may be defined to be any part of a state or county where its boundaries are fixed by law either by legislative enactment or the adjudication of a court or other authorities to whom the power is delegated, where the citizens within the boundaries thus established assemble to vote for public officers, whether their authority be local or they are to act in governing the affairs of the state or nation."

This leaves only one other matter to be considered, and that is, whether the venue could be proved under the description in the petition, should a prosecution be had for selling intoxicating liquor in the district.

From the statutes quoted, we have seen that the law requires precinct lines to be changed whenever the number of voters therein exceed a certain number, and that the board of deputy state supervisors shall *divide, define* and *proclaim* the election precincts. Venue, or place where a violation of law has occurred, must always be proved. It is a subject of proof; and, in view of the above statutes, I can see no difficulty in making such proof. This view is strengthened when we find the Legislature has enacted the following penal statutes with reference to violation of law precincts:

"Section 13254. Whoever votes at an election in a precinct into which he has come for temporary purposes, or, being an

unmarried man, has not resided therein for twenty days next preceding such election, shall be fined not more than five hundred dollars or imprisoned not less than three months nor more than six months.''

''Section 13297.  Whoever fraudulently obtains or attempts to obtain registration as an elector in a precinct in which he is not a qualified elector shall be imprisoned in the penitentiary not less than one year nor more than three years.''

''Section 13298.  Whoever knowingly induces or attempts to induce, aids or abets a person to obtain or apply for registration as an elector in a precinct where such person is not a qualified elector, shall be imprisoned in the penitentiary not less than one year nor more than three years.''

''Section 13302.  Whoever, being a registrar of electors, or other registering officer, enters or consents to the entry in a register or duplicate list of electors in a precinct, the name of a person whom he knows or has good reason to believe is not a qualified voter therein, shall be imprisoned in the penitentiary not less than one year nor more than five years.''

''Section 13303.  Whoever, by gift, promise, offer, coercion, intimidation or other unlawful means, induces or influences, or attempts to induce or influence a registrar of electors or other registering officer, to enter in the register or duplicate list of electors in a precinct, the name of a person, real or fictitious, living or dead, who is not a qualified elector therein, shall be imprisoned in the penitentiary not less than one year nor more than three years.''

''Section 13325.  Whoever votes at a primary election when he can not become a qualified elector in such precinct at or before the election, shall be fined not less than fifty dollars nor more than two hundred dollars or imprisoned not less than ten days nor more than sixty days, or both.''

''Section 13328.  Whoever votes at a primary election at a place other than the polling place in the precinct wherein he resides, shall be fined not less than one hundred dollars nor more than three hundred dollars or imprisoned in the penitentiary for one year, or both.''

''Section 13331.  Whoever votes at a primary election not being an elector resident of the precinct, ward or township in which he votes, shall be fined not less than one hundred dollars nor more than three hundred dollars or imprisoned in the penitentiary for one year, or both.''

The Legislature has evidently thought there would be no difficulty in proving venue in case of a violation of law in reference to illegal voting in precincts.

In view of the foregoing, the court holds against the contention on this point.

The petition, therefore, is held to be valid, and a certificate will be made accordingly.